IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| RICHARD DOWELL, | ) | C/A No. 2:16-cv-01857-RBH-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| NANCY BERRYHILL, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Richard Dowell, through counsel, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on his October 10, 2012 applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). *See* Section 205(g) of the SSA, as amended, 42 U.S.C. Section 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons stated herein, the undersigned recommends that the Commissioner's decision be affirmed.

## Procedural History and ALJ's Findings

The Plaintiff was born March 27, 1965, and was 46 years old on the alleged onset of disability date, November 14, 2011. (R. 203.) The Plaintiff filed for DIB and SSI October 10, 2012. (R. 174, 181.) The Plaintiff claimed disability due to COPD, an amputated foot, back problems, depression, irritable bowel syndrome, neck problems, and knee and hip pain resulting from the amputation. (R. 209.) The Plaintiff's claims were initially denied and denied on

reconsideration. (R. 71-98.) Following a hearing, the Administrative Law Judge (ALJ) denied

his claim on February 5, 2015. (R. 10-21.) The Plaintiff has exhausted his administrative

remedies through the Appeals Council. The ALJ's decision is now the Commissioner's final

action for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the

Commissioner adopted the following findings of the ALJ's February 9, 2015 Decision:

(1)     The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.

(2)     The claimant has not engaged in substantial gainful activity since November 14, 2011, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

(3)     The claimant has the following severe impairments: status post amputation of the 1st and 2nd rays of the left foot with some distal medial tarsal bones an[d] chronic obstructive pulmonary disease. (20 CFR 404.1520(c) and 416.920(c)).

(4)     The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).

(5)     After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) that is further limited by frequently climbing ramps and stairs, balancing, and stooping, but he can never climb ladders, ropes, or scaffolds, kneel, crouch, or crawl. The claimant should avoid concentrated exposure to hazardous machinery and unprotected heights.

(6)     The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)     The claimant was born on March 27, 1968 and was 46 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

(8)     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416-964).

(9)     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)  The claimant has not been under a disability, as defined in the Social Security Act, from November 14, 2011, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 10-21.)

## **Applicable Law**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[1]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P,

---

[1]"[T]he definition of disability is the same under both DIB and SSI . . . ." *Mason v. Colvin*, No. 9:12-cv-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (D.S.C. Aug. 8, 2013) (citing *Emberlin v. Astrue*, No. 06-cv-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  *See* 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context).  If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5);  42 U.S.C. § 1382c(a)(3)(H)(i).  He must make a *prima facie* showing of disability by showing that he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert ("VE"). *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. §

1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the

court to uphold the Commissioner's decision as long as it is supported by substantial evidence.

*Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v.*

*Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a
> conclusion. Substantial evidence consists of more than a mere scintilla of
> evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations

omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that

there is a sound foundation for the Commissioner's findings, and that her conclusion is rational.

*Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to

support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*,

483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

The Plaintiff asserts the ALJ erred in the following three ways:

1. The ALJ erred in giving "no weight" to the opinion of Plaintiff's treating
   family practice provider, Elizabeth Knight, FNP;

2. The ALJ erred by failing to properly employ the symptom test pursuant to
   SSR 96-7p and Fourth Circuit case law;

3. The RFC was not explained properly.

(Dkt. No. 10.)

### 1. The Weight Given to Elizabeth Knight's Opinion

The Plaintiff argues that the ALJ erred by giving "no weight" to Elizabeth Knight,

the Plaintiff's treating nurse practitioner. (Dkt. No. 10 at 2-10.) The ALJ summarized

Ms. Knight's opinion. (R. 18-19.) The ALJ found that Ms. Knight was a "non-acceptable

medical source" but considered her opinion in the context of SSR 06-03p. (R. 19.)  The

ALJ gave her opinion no weight because it was conclusory, from someone unfamiliar

with social security law, and disability is a question left to the Commissioner. (R. 19.)

A nurse practitioner is not a medical source under 20 C.F.R. § 404.1513. *See* SSR 06-

03P, 2006 WL 2329939; *Holcomb v. Comm'r of Soc. Sec.*, No. 5:13-cv-144, 2014 WL 3824027,

at *2 (N.D.W. Va. Aug. 4, 2014) ("nurse practitioners are not considered acceptable medical

sources under 20 C.F.R. § 404.1513(d)(1)"); *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248

(6th Cir. 2015) (holding "nurse practitioners, therapists, and the like are 'non-acceptable medical

sources.'").  When reviewing the weight an ALJ gave to a non-acceptable medial source, "the

ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Paulsen v.*

*Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (citing *Keyes–Zachary v. Astrue*, 695 F.3d 1156,

1164 (10th Cir. 2012) (quoting SSR 06–03p, 2006 WL 2329939, at *6 (Aug. 9, 2006))).

Courts within the Fourth Circuit have held that "where a non-acceptable medical source,

such as a nurse practitioner, has treated a patient under the supervision of physicians and renders

an opinion based on the course and scope of such supervised treatment, the nurse practitioner's

opinion deserves the same weight as that of a treating physician." *Palmer v. Colvin*, No. 5:13-cv-

126-BO, 2014 WL 1056767, at *2 (E.D.N.C. Mar. 18, 2014) "The ALJ may consider opinions

from non-acceptable medical sources, such as nurse practitioners, as he would opinions from

acceptable medical sources, but their opinions are not entitled to special deference under the

regulations." *Dinges v. Colvin*, No. 5:14-cv-00032, 2015 WL 3467024, at *10 (W.D. Va. June 2,

2015). "In other words, if the facts of treatment show the primary caregiver is a non-acceptable

medical source, such as a nurse practitioner, and a doctor adopts the findings and information

about the patient and is engaged in the treatment, the nurse practitioner's evaluation *becomes* the report of the doctor." *Id.*

The ALJ was correct in finding that Ms. Knight was a "non-acceptable medical source." The Plaintiff devotes some argument to the "treating physician rule" under SSR 06–03p, however this argument is misplaced as Ms. Knight was not a physician and her opinion was not entitled to controlling weight. Additionally, the opinion submitted by Ms. Knight was not reviewed by or adopted by any physician.

The Plaintiff argues that that Ms. Knight regularly treated the Plaintiff and consequently the ALJ had a duty to explain why he gave Ms. Knight's opinion little weight. Ms. Knight first saw the Plaintiff on March 6, 2013. (R. 291.) The medical records indicate that Ms. Knight examined the Plaintiff approximately six (6) times before giving her opinion. (R. 290-315.) Ms. Knight filled out the form conveying her opinion on August 12, 2014. (R. 319.)

The ALJ discounted Ms. Knight's opinion because it was "conclusory" and from "someone unfamiliar with the Social Security Program Rules and Regulations." (R. 19.) This court has reviewed Ms. Knight's opinion. The opinion is one page long and presented Ms. Knight with a series of questions. (R. 318.) Ms. Knight indicated that the Plaintiff was permanently disabled and could work twenty (20) hours a week with some restrictions. (*Id.*) The restrictions given by Dr. Knight were that he could sit and type up to six (6) hours per day; he could kneel/squat, bend/stoop, and push/pull four (4) hours per day; he could lift/carry up to ten (10) pounds for two (2) hours per day; and he was not able to stand, walk, or climb stairs/ladders. (R. 318.)

The court notes that the opinion is inconsistent with other evidence in the record and within itself. Ms. Knight's opinion does not cite to any medical evidence and does not give any reasoning or explanation. 20 C.F.R. §§ 404.1527, 416.927 (the more a source supports an opinion with medical evidence, particularly medical signs and laboratory findings, the more weight the ALJ will give that opinion). Ms. Knight's opinion also contradicts itself. Ms. Knight stated that the Plaintiff could kneel/squat for four hours, stoop/bend for four hours yet could not stand or walk at all. Similarly, her opinion stated the Plaintiff could lift up to ten pounds for two hours but again could not stand or walk.

The Plaintiff was examined in December of 2012, by Thomas Motycka, M.D., at the request of the state agency (R. 265-71). Dr. Motycka found that Plaintiff sat comfortably on the examination table. (R. 267). The Plaintiff's back was not tender. (*Id.*) He had a full range of motion (ROM) in his lumbar spine, shoulders, elbows, wrists, hips, knees, and ankles; and full to near full ROM in his cervical spine (R. 268). The Plaintiff's hands were normal (R. 268). Dr. Motycka noted the Plaintiff's amputation on his left foot was well-healed with a non-tender surgical site and some loss of sensation. (R. 268-69.) Dr. Motycka noted the Plaintiff had some atrophy in his left foot and slight atrophy in his left calf. (*Id.*) The Plaintiff had normal, symmetrical reflexes and he had full motor strength in his extremities and near full (four out of five) left ankle dorsal and plantar flexion (*Id.*) Plaintiff adequately performed tandem and heel toe walking with a little irregularity and limp on the left. (*Id.*) The Plaintiff held a cane in his left, non-dominant hand, and he squatted and rose from a squat without difficulty. (R. 268.). Dr. Motycka noted that the Plaintiff had "maintained functionality" and was "ambulatory." (R. 269.)

The Plaintiff argues that Dr. Motycka's examination and opinion cannot carry more weight than Ms. Knight's because the ALJ did not explain why he gave Dr. Motycka's opinion

more weight and the Fourth Circuit has held that a non-examining doctor's opinion may not constitute substantial weight. (Dkt. No. 10 at 9-10.) The ALJ in this case did give reasons for giving Ms. Knight's opinion no weight and Dr. Motycka's opinion substantial weight. The ALJ stated Ms. Knight's opinion was conclusory. (R. 19.) When compared to Dr. Motycka's opinion, Ms. Knight's opinion is conclusory. Dr. Motycka's opinion is six (6) pages long and single spaced. (R. 265-270.) Dr. Motycka's opinion started with a "comprehensive history and examination" of the Plaintiff's "whole body." (R. 265.) The opinion gives detailed analysis of each of the Plaintiff's conditions and what effects they have on his residual functional capacity. (R. 265-270.) The Plaintiff's citation to cases concerning non-examining doctor's opinions are not applicable to the case at bar because Dr. Motycka examined the Plaintiff. The ALJ explained why he gave Dr. Motycka's opinion substantial weight and gave Ms. Knight's no weight. (R. 18.) The weight given by the ALJ to Ms. Knight's opinion was supported by substantial evidence.

### 2. The ALJ's Analysis of the Plaintiff's Symptoms and Pain

The Plaintiff argues that the ALJ did not properly apply the two-part test for assessing symptoms in *Craig v. Chater,* 76 F.3d 585, 594 (4th Cir.1996). "The determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig,* 76 F.3d at 594.

> First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.... It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig*, 76 F.3d at 593, 595. Factors relevant to assessing a claimant's symptoms apart from objective medical evidence include daily activities, how symptoms affect daily life, medications, and treatments. 20 C.F.R. § 404.1529(c). The court "cannot make credibility determinations," but must "review the ALJ's decisions for substantial evidence." *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005).

The Plaintiff argues that because he met the threshold requirement of showing that his medical records established the existence of medical impairment which could reasonably be expected to produce the pain or other symptoms alleged, that it is inconsistent to find that he did not meet the second step under *Craig*. (Dkt. No. 10 at 10-11.) By the Plaintiff's logic, *Craig* would not be a two-part test. The Plaintiff's argument is that if a claimant meets the first step, the claimant automatically has met the second step. This is not the case.

To support his argument, the Plaintiff relies on *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), to argue for the proposition that once the threshold of *Craig* has been met, a claimant may rely exclusively on subjective evidence to establish the second step. While this is true, the Plaintiff ignores Footnote 3, which addressed the role of objective evidence in step two as follows:

> While objective evidence is not mandatory at the second step of the test,
>
> "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (quoting *Craig v. Chater,* 76 F.3d 585, 595 (4th Cir.1996)).

The Plaintiff argues that the ALJ improperly considered that he made $512.00 in 2012 after the alleged onset date. (Dkt. No. 10 at 11.) The ALJ acknowledged that the $512.00 was not substantial gainful activity. (R. 16.) The ALJ noted the earnings to show the Plaintiff may have at times had a higher level of ability than his testimony indicated. When asked at the hearing about the $512.00, the Plaintiff said it was not his. (R. 34.) When pressed, the Plaintiff said, "I have no clue. I had no income in '12." (*Id.*) The ALJ then reminded the Plaintiff of the name of the company that had paid it. The Plaintiff responded, "Yes, sir. Yes, sir, okay. I drove a truck back from West Virginia for them….It was a pickup truck." (*Id.*) The ALJ found in his Decision that the Plaintiff had not tried to be mislead, but, rather, that the information provided by the Plaintiff might not always be reliable. (R. 16.) The Plaintiff argues this was improper. This court cannot make its own credibility determinations. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). The ALJ heard the Plaintiff's testimony and observed the Plaintiff's conduct while testifying. The Plaintiff's testimony concerning the $512.00 is a small portion of the credibility analysis, and this court does not find any error.

The Plaintiff next argues that the ALJ's decision is inconsistent with the evidence cited to support it. The ALJ found that the Plaintiff's activities of daily living were inconsistent with his testimony. (R. 16.) The ALJ cited to "Exhibit 4E." (*Id.*) The ALJ specifically noted an Adult Function Report complete November 2, 2012, that was a part of 4E. (R. 224-230.) The ALJ accurately noted that the Plaintiff indicated in Exhibit 4E that he could play with his dog, read, watch television, manage his own finances, operate a motor vehicle, and ride in a car. (R. 16.) The Plaintiff argues that the ALJ ignored the substantial limitations that the Plaintiff indicated

having in the same exhibit. (Dkt. No. 10 at 11-12.) In Exhibit 4E, the Plaintiff stated that he had

constant pain, had stomach issues, was unable to balance or lift, and constantly was out of

breath.[1] (R. 224-230.)

The Plaintiff argues that the ALJ did not square some of his testimony with the medical

evidence. The Plaintiff argues that ALJ did not address the Plaintiff's testimony that he could

not climb on ladders or carry anything while working. (Dkt. No. 10 at 15.) The ALJ's Residual

Functional Capacity ("RFC") analysis accounted for much of this testimony. The RFC found

that the Plaintiff could never climb ladders. (R. 15.) The ALJ found that the Plaintiff was capable

of only light work, which "involves lifting no more than 20 pounds at a time with frequent lifting

or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). This is consistent

with the Plaintiff's testimony and the Plaintiff's statements in Exhibit 4E.

The ALJ thoroughly analyzed each of the Plaintiff's alleged disabling conditions and

compared the Plaintiff's statements to the evidence in the record. The ALJ noted that the Plaintiff

testified that he could not work due to debilitating foot pain. (R. 17.) The ALJ then cited that the

Plaintiff had received conservative treatment for the pain, had unremarkable examinations, no

dysfunction, and full strength. The ALJ noted the Plaintiff was still ambulatory and had never

been placed on any restrictions by a doctor. (R. 17.) The ALJ noted that the Plaintiff's COPD

responded well to treatments, that examinations showed normal lung expansion and sound, and

that the Plaintiff was inconsistent with his statements regarding whether he still smoked. (*Id.*)

The ALJ accurately cited to the Plaintiff's medical evidence in determining the Plaintiff's

---

[1] The court notes that the Plaintiff stated on the first page of Exhibit 4E that he "cannot see enough to read" but then lists "reading" has his first hobby or interest and stated that he can read as long as there is large print. (R. 224, 227.)

credibility. This court finds that the Plaintiff's credibility analysis of the Plaintiff was supported by substantial evidence.

The Plaintiff additionally argues that the ALJ failed to consider or mention the testimony of Nancy Shanahan. An ALJ is permitted to use evidence from non-medical sources at his discretion. 20 C.F.R. §§ 404.1513, 416.913 (stating that an ALJ "may" use evidence from non-medical sources, such as spouses and friends, to determine the severity of an impairment); SSR 96-7p, 1996 WL 374186, at *8 (stating that an ALJ "may" draw credibility inferences and conclusions from family and friends). An ALJ need not independently assess the credibility of a lay witness who offers testimony that is duplicative or cumulative of a plaintiff's allegations. *Plowden v. Colvin*, No. 1:12-cv-2588-DCN, 2014 WL 37217, at *18 (D.S.C. Jan. 6, 2014) ("Where a lay witness's testimony merely repeats the allegations of a plaintiff's own testimony, specific reasons are not necessary for dismissing the lay witness's testimony.")

While it does concern the court that Ms. Shanahan's testimony was not even acknowledged, this is not a clear error and her testimony was wholly duplicative of the Plaintiff's. Ms. Shanahan's testimony was extremely brief. (R. 44-45.) Ms. Shanahan testified that she helped the Plaintiff with certain activities, that his left hand had a tremor, and that the Plaintiff could not walk but rather "waddles." (*Id.*) Ms. Shanahan's brief testimony echoed the Plaintiff's testimony. Therefore, any failure by the ALJ to mention or consider her testimony was harmless.

### 3. The ALJ's RFC Assessment

The Plaintiff argues that the ALJ did not perform a function-by-function analysis in formulating the Plaintiff's RFC as required *Monroe v. Colvin*, 826 F.3d 176 (4th Cir. 2016).

(Dkt. No. 10 at 17.)  The Plaintiff argues that the RFC "comes out of the blue" and is not explained at all. (*Id.*)

The RFC is a determination, based on all the relevant medical and non-medical evidence, of what a claimant can still do despite her impairments. *See* 20 C.F.R. §§ 404.1520, 404.1545, 404.1546; SSR 96-8p, 1996 WL 374184, at *2.  Assessing a claimant's RFC is the ALJ's responsibility.  *Id.*  In a case with multiple impairments, the ALJ must consider all medically determinable impairments, including medically determinable impairments that are not "severe," when determining the claimant's RFC. *Id.* §§ 404.1545(a), 416.945(a).  The ALJ must also consider the combined effect of all impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. *Id.* § 404.1523; *see Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989)

Additionally, SSR 96-8p provides that "[t]he RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." It must also "include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 96-8p. The RFC must address both the exertional and non-exertional capacities of the claimant and must be expressed in terms of work-related functions. SSR 96-8p.

There is no "*per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis[.]" *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). However, "[r]emand may be appropriate…where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other

inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)).

In *Monroe v. Colvin*, the Fourth Circuit noted that "expressing the RFC before analyzing the claimant's limitations function by function creates the danger that 'the adjudicator [will] overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do.' " 826 F.3d at 187 (quoting *Mascio v. Colvin*, 780 F.3d at 636)). In *Monroe*, the ALJ found that sleep apnea and narcolepsy were severe impairments, but never made any specific findings about whether these conditions "would cause [the claimant] to experience episodes of loss of consciousness or fatigue necessitating breaks in work and if so, how often these events would occur." *Id.* at 187-88. Instead, the ALJ simply concluded that the claimant was capable of a reduced range of light work and that his claimed symptoms were not credible to the extent they were inconsistent with the RFC. *Id.* Remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Mascio*, 780 F.3d at 636).

The Plaintiff argues that the ALJ improperly cited only one of Ms. Knight's many treatment notes. (Dkt. No 10. at 18-21.) The Plaintiff argues that the ALJ only considered this one treatment note and the opinion evidence instead of the entire record. (*Id.*) The ALJ stated in his Decision that he considered "all symptoms" and "the objective medical evidence and other evidence." (R. 15.) The ALJ stated that he based his RFC assessment on the evidence "as a whole." (R. 19.) The Plaintiff extensively points out all of the records the ALJ did not explicitly cite in his Decision. (*Id.* at 18.) The Plaintiff argues that the ALJ's reliance on one treatment note while not citing the rest violated SSR 96-8p and *Monroe*. (Dkt. No. 12 at 8.) The Plaintiff

does not specifically cite anything in the other records that would support his contention that they were not considered by the ALJ. The ALJ is not required to discuss every single piece of evidence in the record, and a failure to cite a specific piece of evidence is not an indication that the evidence was not considered. *See Green v. Shalala*, 51 F.3d 96 (7th Cir.1995) ("A written evaluation of each piece of evidence or testimony is not required."); *Brewer v. Astrue*, No. 7:07cv24, 2008 WL 4682185, at *3 (E.D.N.C. Oct. 21, 2008) ("ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.").

The court has reviewed these records and finds them to be consistent with the ALJ's decision. The Plaintiff was seen on March 6, 2013 for "triage." (R. 291.) The record for this visit is otherwise bare. On April 8, 2013, the Plaintiff was seen. Ms. Knight noted the Plaintiff's medical history. (R. 289-291.) She noted he took hydrocodone and dicyclomine. (*Id.*) She noted he had COPD but was not ready to quit smoking. (*Id.*) She noted his foot was amputated in 1988 (*Id.*) She noted he had tremors in both of his hands. (*Id.*) She noted that he had irritable bowel syndrome. (*Id.*) She told the Plaintiff she would see him again in three months. (*Id.*)

The Plaintiff returned to Ms. Knight on August 4, 2013. (R. 314-16.) The skin graft of the Plaintiff's foot had opened about a week before the visit, and the Plaintiff had been treating it with antibiotic ointment. The opening was two centimeters by one centimeter and had no erythema or purulent discharge. The Plaintiff had chest pain, coughing, wheezing, abdominal pain, and diarrhea. (R. 315.) The Plaintiff was prescribed antibiotics and told to return in one month. (R. 315-16.)

The Plaintiff saw Ms. Knight again in February of 2014. (R. 311-14.) The Plaintiff's "chief complaint" was getting Chantix to help him stop smoking. (R. 311.) The Plaintiff was having intermittent constipation related to IBS. (*Id.*) The Plaintiff had a normal lung exam with

no wheezing. (R. 312.) The Plaintiff did not complain of chest pain. The skin on the Plaintiff's

foot was intact with no infection. (*Id.*) The Plaintiff's hand tremor was noted.[2] (R. 312.) The

Plaintiff was taken off narcotics due to a previous urine screen. (*Id.*) The Plaintiff was given

Chantix and told to try a higher fiber diet. (*Id.*) The Plaintiff was told to follow up in three

months.

The Plaintiff returned and saw Ms. Knight on March 26, 2014. The Plaintiff was doing

well with Chantix but did smoke an occasional cigarette and had weird dreams. (R. 309.) The

Plaintiff had normal lungs with normal breathing and no wheezing. (R. 310.) The Plaintiff's

hand tremors were noted, and he was referred to an endocrinologist to determine if he had

hypothyroidism. (R. 310.)

The Plaintiff returned for a follow up on April 16, 2014 with Dr. Woodrow Bell. (R. 308-

09.) The Plaintiff's lungs were normal with no wheezing. (R. 308.) The Plaintiff was there to

receive the results of thyroid testing that were not available. (*Id.*)

The Plaintiff saw Ms. Knight again on May 28, 2014. (R. 306-08.) The Plaintiff reported

he had burning in his arms during exertional activities. (R. 306.) The Plaintiff had skin lesions

on his hands. (*Id.*) The Plaintiff was breathing normally with no wheezing. (R. 306.) The

Plaintiff reported chest pain. (R. 307.)

Having reviewed these records, the court determines that substantial evidence supports

the ALJ's Decision. The Plaintiff's COPD does not appear to be a disabling condition as the

Plaintiff's lungs and breathing were generally normal. The only significant occurrence with the

Plaintiff's foot was when the skin graft opened. The wound was treated and apparently gone by

the next visit. The Plaintiff has not cited anything in the records that the ALJ failed to consider

_____

[2] The ALJ found that the Plaintiff's hand tremors were a non-severe impairment because they
could be managed medically and did not require any aggressive treatment. (R. 13.)

that would establish he is disabled.  This court concludes that the ALJ's RFC assessment was supported by substantial evidence.

## Recommendation

Wherefore, based upon the foregoing, the court recommends that the Commissioner's decision be **AFFIRMED**.


IT IS SO RECOMMENDED.


July 31, 2017

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE