UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| Richard Dowell, | ) | Civil Action No.: 2:16-CV-1857-RBH |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **ORDER** |
| Nancy A. Berryhill, Acting Commissioner of the Social Security Administration, | ) | |
| Defendant. | ) | |

Plaintiff Richard Dowell ("Plaintiff") seeks judicial review, pursuant to 42 U.S.C. § 405(g), of a final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act").[1] The matter is before the Court for review of the Report and Recommendation of United States Magistrate Judge Mary Gordon Baker, made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2) for the District of South Carolina. The Magistrate Judge recommends affirming the Commissioner's decision. [ECF #14].

**Procedural History**

Plaintiff filed this current application for DIB and SSI benefits on October 10, 2012, alleging an amended onset date of November 14, 2011. Briefly stated, Plaintiff alleges he is disabled due to a partial amputation of his left foot, back problems, depression, irritable bowel syndrome, neck problems, knee and hip pain resulting from his amputation, and chronic obstructive pulmonary disorder ("COPD"). Plaintiff's application for benefits was denied initially and upon review. Following a

---

[1] This Court notes that Plaintiff states on page 12 of his Objections [ECF #15, p. 12] that this is an "SSI-only case." However, a review of the record and Complaint filed by Plaintiff suggests that Plaintiff is seeking disability insurance benefits, as well.

hearing, the Administrative Law Judge (the "ALJ") denied his claim on February 5, 2015. [ECF #9-2, p. 8]. The Appeals Council denied Plaintiff's request for review, making the ALJ's findings the final decision of the Commissioner of Social Security.

The ALJ's findings were as follows:

> (1) The claimant meets the insured status requirements of the Social Security Act through June 30, 2014.
>
> (2) The claimant has not engaged in substantial gainful activity since November 14, 2011, the amended onset date (20 C.F.R. 404.1571 *et seq.* and 416.971 *et seq.*).
>
> (3) The claimant has the following severe impairments: status post amputation of the 1st and 2nd rays of the left foot with some distal medial tarsal bones and chronic obstructive pulmonary disease (COPD) (20 C.F.R. 404.1520(c) and 416.920(c)).
>
> (4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5) After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) that is further limited by frequently climbing ramps and stairs, balancing, and stooping, but he can never climb ladders, ropes, or scaffolds, kneel, crouch or crawl. The claimant should avoid concentrated exposure to hazardous machinery and unprotected heights.
>
> (6) The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).
>
> (7) The claimant was born on March 27, 1965 and was 46 years old, which is defined as a younger individual age 18-49, on the amended alleged disability onset date (20 C.F.R. 404. 1563 and 416.963).
>
> (8) The claimant has a limited education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

(9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled" whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10) Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11) The claimant has not been under a disability, as defined in the Social Security Act, from November 14, 2011, the amended onset date through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

[ECF #9-2, pp. 13-22].

On June 8, 2016, Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. [ECF #1]. Both Plaintiff and Defendant filed briefs [ECF #10, ECF #11, ECF #12], and the Magistrate Judge issued her Report and Recommendation ("R&R") on July 31, 2017, recommending that the Commissioner's decision be affirmed [ECF #14]. The Magistrate Judge considered all of the medical testimony within the record and determined that the ALJ properly addressed the relevant medical findings, as well as considered Plaintiff's testimony in determining that the ALJ's decision is supported by substantial evidence. [ECF #18, p. 18]. Plaintiff filed objections on August 3, 2017. [ECF #15]. Defendant responded to these objections on August 17, 2017. [ECF #16].

### Statement of Facts

The Plaintiff's medical history is adequately set forth in the ALJ's decision, and in the subsequent briefing by the parties. Briefly stated, the medical records generally provide that Plaintiff had a partial left foot amputation in 1988. Plaintiff also has a history of smoking and alcohol use. In late 2011 and early 2012, Plaintiff sought treatment for complaints related to abdominal pain and

3

diarrhea, as well as foot pain. In late 2012, Jorge Galan, D.O. with Columbia Gastroenterology Associates assessed Plaintiff as most likely having stress-induced irritable bowel syndrome ("IBS"). [ECF #2F, pp. 2-4]. In February 2013, Plaintiff saw Donald Moore, M.D., for left foot pain and an ulcer. [ECF #6F]. Dr. Moore cleaned the area and gave Plaintiff antibiotics. In April of 2013, Plaintiff presented to Eau Claire Cooperative Health Center, where the medical records indicate a history of COPD, foot pain, and a longstanding hand tremor. Elizabeth Knight, NP, assessed Plaintiff and prescribed albuterol pm, advised Plaintiff to cease smoking, prescribed Levsin for IBS, and referred Plaintiff to a neurologist for his hand tremors. [ECF #9F, p. 289]. He returned to see Nurse Knight later in August of 2013 for treatment related to an open area on his foot. Plaintiff continued to see Nurse Knight in 2014. In April 2014, results of blood work performed on Plaintiff revealed abnormal thyroid function, and hyperthyroidism was suspected as the cause of Plaintiff's hand tremors. [ECF #13F, PP. 3-6]. In May of 2014, Plaintiff told Nurse Knight that he was experiencing a burning sensation in his arms, though Nurse Knight did not find any abnormal motor dysfunction. [ECF #13F, p. 2]. In August of 2014, Nurse Knight completed a Medical Release/Physician's Statement. On that form she indicated Plaintiff could work 20 hours per week and could lift/carry 10 pounds for 2 hours per day, but he could not stand, walk, or climb stairs/ladders. [ECF #14F].

Earlier in 2012, Thomas Motycka, M.D. performed a consultative examination on Plaintiff at the request of the state agency. Dr. Motycka found that despite Plaintiff's left foot deformity, Plaintiff was ambulatory and maintained functionality. [ECF #3F, pp. 4-5]. In February of 2013, Dale Van Slooten, M.D., a state agency physician, reviewed Plaintiff's record and found Plaintiff was capable of performing work that involved lifting/carrying 25 pounds frequently and 50 pounds occasionally, sitting for 6 hours in an 8 hour work day, and standing/walking for 6 hours in an 8-hour workday. [ECF

4

#1A; 2A]. A second state agency physician, Michele Spero, M.D., opined that Plaintiff could perform medium work after reviewing the record in July of 2013. [ECF #5A; 6A].

At the hearing, Plaintiff and his friend/stepsister, Nancy Shanahan, both testified as to Plaintiff's ailments and their effect on Plaintiff's ability to perform daily activities. A vocational expert also testified and found that Plaintiff was able to perform light work that involved no climbing ladders/ropes/scaffolds, kneeling, crouching, and crawling, frequent stooping and balancing, and no concentrated exposure to hazardous machinery and unprotected heights.

## Standard of Review

I. **Judicial Review of the Commissioner's Findings**

The federal judiciary has a limited role in the administrative scheme established by the Act, which provides the Commissioner's findings "shall be conclusive" if they are "supported by substantial evidence." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

This statutorily mandated standard precludes a de novo review of the factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157, 1157-58 (4th Cir. 1971); *Hicks v. Gardner*, 393 F.2d 299, 302 (4th Cir. 1968). The Court must uphold the Commissioner's factual findings "if they are supported by substantial evidence and were reached through application of the correct legal standard." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *see also Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972) (stating that even if the Court disagrees with the Commissioner's decision, the Court must uphold the decision if substantial evidence

5

supports it). This standard of review does not require, however, mechanical acceptance of the Commissioner's findings. *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). The Court "must not abdicate [its] responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner]'s findings, and that [her] conclusion is rational." *Vitek*, 438 F.2d at 1157-58.

## II. The Court's Review of the Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to the Court. The Magistrate Judge's recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court must conduct a de novo review of those portions of the Report and Recommendation ("R & R") to which specific objections are made, and it may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

The Court must engage in a de novo review of every portion of the Magistrate Judge's report to which objections have been filed. *Id.* However, the Court need not conduct a de novo review when a party makes only "general and conclusory objections that do not direct the [C]ourt to a specific error in the [M]agistrate [Judge]'s proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). In the absence of specific objections to the R & R, the Court reviews only for clear error, *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005), and the Court need not give any explanation for adopting the Magistrate Judge's recommendation. *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983).

## **Applicable Law**

Under the Act, Plaintiff's eligibility for the sought-after benefits hinges on whether he is under

a "disability." 42 U.S.C. § 423(a). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* § 423(d)(1)(A). The claimant bears the ultimate burden to prove disability. *Preston v. Heckler*, 769 F.2d 988, 991 n.* (4th Cir. 1985). The claimant may establish a prima facie case of disability based solely upon medical evidence by demonstrating that his impairments meet or equal the medical criteria set forth in Appendix 1 of Subpart P of Part 404 of Title 20 of the Code of Federal Regulations. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

If such a showing is not possible, a claimant may also establish a prima facie case of disability by proving he could not perform his customary occupation as the result of physical or mental impairments. *See Taylor v. Weinberger*, 512 F.2d 664, 666-68 (4th Cir. 1975). This approach is premised on the claimant's inability to resolve the question solely on medical considerations, and it is therefore necessary to consider the medical evidence in conjunction with certain vocational factors. 20 C.F.R. §§ 404.1560(a) & § 416.960(a). These factors include the claimant's (1) residual functional capacity, (2) age, (3) education, (4) work experience, and (5) the existence of work "in significant numbers in the national economy" that the individual can perform. *Id.* §§ 404.1560(a), 404.1563, 404.1564, 404.1565, 404.1566, 416.960(a), 416.963, 416.964, 416.965, & 416.966. If an assessment of the claimant's residual functional capacity leads to the conclusion that he can no longer perform his previous work, it then becomes necessary to determine whether the claimant can perform some other type of work, taking into account remaining vocational factors. *Id.* §§ 404.1560(c)(1) & 416.960(c)(1). Appendix 2 of Subpart P governs the interrelation between these vocational factors. Thus, according to the sequence of evaluation suggested by 20 C.F.R. §§ 404.1520 & 416.920, it must be determined

(1) whether the claimant currently has gainful employment, (2) whether he suffers from a severe physical or mental impairment, (3) whether that impairment meets or equals the criteria of Appendix 1, (4) whether, if those criteria are met, the impairment prevents him from returning to previous work, and (5) whether the impairment prevents him from performing some other available work.

## Analysis

### I. Credibility Analysis of Plaintiff & Failure to Address Ms. Shanahan's Testimony pursuant to SSR 96-7p

Plaintiff objects on several different grounds to the ALJ's analysis of Plaintiff's testimony and subsequent credibility assessment because he argues the ALJ did not discuss the frequency of Plaintiff's ability to perform certain activities, and the ALJ's subsequent analysis of Plaintiff's impairments as they relate to his ability to perform certain activities. Plaintiff also objects to the Magistrate Judge's determination that the ALJ's failure to consider or acknowledge Nancy Shanahan's testimony was not clear error, and that the testimony was "wholly duplicative" of Plaintiff's testimony. The Commissioner argues that the ALJ properly analyzed Plaintiff's credibility, and that the use of the testimony from Ms. Shanahan was discretionary. Ms. Shanahan testified at the hearing that she is "like a stepsister" to Plaintiff and has known him for nearly twenty years. [ECF #9-2, p. 45]. Ms. Shanahan further testified that she helps Plaintiff by preparing his meals, washing his clothes, and taking him to his doctor's appointments. [ECF #9-2, p. 45]. With respect to Plaintiff's medical condition, she testified that she has witnessed Plaintiff's left hand shaking and getting progressively worse over the course of the time that she has known Plaintiff. [ECF #9-2, p. 45]. She further testified that Plaintiff appears to "waddle" rather than walk due to the condition of his foot. [ECF #9-2, p. 46]. In response, the Commissioner essentially argues that the ALJ's failure to explicitly discuss this testimony is harmless error because the testimony was duplicative of the Plaintiff's testimony.

8

These objections call into question whether the ALJ properly determined Plaintiff's alleged disabling effects and the determination as to Plaintiff's credibility, in part based on the fact that the ALJ did not consider a lay witness's testimony that appears to bolster Plaintiff's allegations of his symptoms and pain. This Court cannot make credibility determinations but may review the ALJ's decision to determine whether substantial evidence supports the ALJ's credibility assessment. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005). When an ALJ is considering a pain and credibility assessment, the ALJ "must consider the entire case record, including . . . statements and other information provided by . . . other persons about the symptoms and how they affect the individual." SSR 96-7p. Lay witnesses, such as a family member or friend, may provide statements about how a claimant's daily life and ability to work are affected by these symptoms. 20 C.F.R. § 404.1529(a). A lay witness must be evaluated by the ALJ in a way that allows a subsequent reviewer to follow his line of reasoning. *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016). In *Plowden v. Colvin*, No. 1:12-cv-2588-DCN, 2014 WL 37217, at *5 (D.S.C. Jan. 6, 2014), the court determined that while the ALJ failed to comply with SSR 96-7p by failing to consider a lay person's testimony, it was harmless error because the decision was supported by substantial evidence and remanding the case would not lead to a different result.

Here, the Magistrate Judge determined that substantial evidence supported the ALJ's determination that the Plaintiff's account of his symptoms was "unpersuasive" based on the record. In the decision, the ALJ referenced the Function Report (Exhibit 4E) to state what Plaintiff alleges he is able and unable to accomplish as far as activities are concerned. The ALJ then states that the Plaintiff's reports of disabling symptoms are not consistent with treatment records of the claimant's reported activities. The ALJ cites to that same report to state Plaintiff has admitted to certain abilities; however,

9

the Adult Function Report includes references to Plaintiff's allegations that he cannot perform certain activities. The ALJ later points out that while Plaintiff states he has debilitating foot pain, he is still ambulatory and has never been placed on restrictions by a doctor. [ECF #9-2, p. 18]. The ALJ notes that the fact that the claimant earned a small sum of money in 2012 suggests his ability to perform activities are greater than what he reports. [ECF #9-2, p. 17]. However, the ALJ also finds that Plaintiff's impairments could reasonably cause his symptoms, while at the same time stating his symptoms are not consistent with his treatment records. Thus, the ALJ's decision is vague in the explanation of why Plaintiff's allegations are unpersuasive. Moreover, because the ALJ implicitly finds Plaintiff not entirely credible based in part on the finding that Plaintiff's reported activities are not consistent with the medical records, this Court finds that the testimony of the Ms. Shanahan could have an effect on the outcome of the case and should have been analyzed. Specifically, her testimony that she aides Plaintiff in household chores and other activities of daily living tends to bolster Plaintiff's testimony that he is unable to care for himself. Unlike *Plowden*, it is conceivable that a true analysis of her testimony could lead to a different result in that it supplements Plaintiff's testimony and supports a positive finding as to his credibility. At the very least, this Court is unable to determine whether the ALJ adequately meets the regulations under SSR 96-7p in that there is no mention of this testimony. Accordingly, this Court cannot say with confidence whether the ALJ's analysis as to this issue is supported by substantial evidence, and thus remand is appropriate to evaluate Ms. Shanahan's testimony, and for the ALJ to reevaluate Plaintiff's credibility in conjunction with his reported daily activities that are found within the record.

II. **Weight Afforded to Elizabeth Knight, APRN**

Plaintiff also raises several objections related to the treatment of the weight afforded the opinion

of Elizabeth Knight, APRN, including that it is contradictory to other findings, it was not properly analyzed in accordance with SSR 06-3p, and the ALJ cites to only one of her case notes in rejecting her opinion. In the decision, the ALJ explained that Nurse Knight' is a "non-acceptable medical source," though after considering her opinion he afforded the opinion "no weight" because it is conclusory and offered by someone unfamiliar with the Social Security program. The Magistrate Judge found substantial evidence supported the ALJ's opinion.

On the date this claim was filed, nurse practitioners were not considered acceptable medical sources under 20 C.F.R. § 404.1513(d)(1). However, within the Fourth Circuit, if a nurse practitioner has treated under the supervision of a physician, and within the course and scope of supervised treatment renders an opinion, then the nurse practitioner's opinion deserves the same weight as that of a treating physician. *Palmer v. Colvin*, No. 5:13-CV-126-BO, 2014 WL 1056767, at *2 (E.D.N.C. March 18, 2014) (citing *Bond v. Astrue*, No. 4:09-CV-73-BO, at *4 (E.D.N.C. Apr. 21, 2010)); *see generally Jones v. Colvin*, No. 9:14-4339-TMC-BM, 2016 WL 1054991, at *4 (D.S.C. Mar. 17, 2016). Plaintiff argues that financial resources prevented Plaintiff from seeing a physician. Instead, Plaintiff treated on a consistent basis with Nurse Knight. The Commissioner argues that Nurse Knight's opinions were inconsistent with the medical records and that she was unfamiliar with the Social Security disability programs; however, the Commissioner does not point to a place in the record affirming this claim.

Nonetheless, SSR 06-3p, which is now rescinded as of March 27, 2017, but was in effect on the date the ALJ made its determination, provides that opinions from medical sources who are not "acceptable medical sources" such as a nurse practitioner, *may still be used* to show the severity of impairment and how it affects an individual's ability to function. The regulation also provides that the

11

factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d), which explicitly apply only to "acceptable" medical sources, may also be applied to medical sources such as nurse practitioners who have seen the individual in their professional capacity. These factors include length of time the source has known the individual, the consistency of the opinion with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, and any area of expertise or specialty related to the individual's alleged impairment.

Here, the ALJ does not appear to consider any of the above-listed factors in addressing the Medical Release Statement provided by Nurse Knight. Instead, the ALJ argues that it is conclusory, despite the fact that it provides fairly specific activity restrictions. Nurse Knight also saw Plaintiff on several occasions at Eau Claire Cooperative Family Practice between 2013 and 2014. In fact, this Court is unable to square the fact that despite the ALJ affording Nurse Knight's opinion on the statement form no weight, earlier in the decision when he discusses the assigned residual functional capacity, the ALJ gives "significant weight" to the treating sources at Eau Claire Cooperative Family Practice and Palmetto Health Baptist. [ECF #9-2, p. 18]. Nurse Knight saw Plaintiff on the majority of the visits that he had at Eau Claire Cooperative Family Practice. This Court agrees with Plaintiff that this creates a contradiction within the ALJ's decision that prevents this Court from being able to determine whether the decision is supported by substantial evidence. Accordingly, this Court remands this case in order for there to be a proper analysis of Nurse Knight's opinion that is consistent with the regulations.

### III. Proper Explanation of RFC

Plaintiff also objects to the fact that the ALJ allegedly did not properly perform a function-by-function evaluation comparing the impairments to the residual functional capacity. The Commissioner argues, and the Magistrate Judge agreed, that the ALJ sufficiently explained the RFC to enable

meaningful judicial review under the Social Security Regulations. SSR 96-8p provides, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis." Those functions are listed in subparts (b), (c), and (d) of 20 C.F.R. §§ 404.1525 and 416.945, and they include a claimant's physical abilities, mental abilities, and other abilities affected by impairments. The Fourth Circuit has clarified that while the RFC assessment must include a narrative discussion describing how the evidence supports the ALJ's conclusions, there is no particular language or format to follow so long as it permits meaningful judicial review. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Clark v. Comm'r of Soc. Sec.*, No. 09-417, 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010). There is no per se rule requiring a court remand a case when the ALJ does not perform an explicit function-by-function analysis. *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015). However, remand may be appropriate where an ALJ does not discuss a claimant's capacity or ability to perform relevant functions or whether "other inadequacies in the ALJ's analysis frustrate meaningful review. *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013).

Here, as previously discussed in the foregoing analysis, this Court is unable to determine whether the ALJ's decision is supported by substantial evidence because he failed to consider the impact of a witness's testimony as it relates to the Plaintiff's credibility finding. Additionally, the ALJ's discussion of a treating nurse's opinion appears contradictory in that he gave differing weight to her treatment records, and he argues her opinion is conclusory without substantial discussion. Finally, this Court finds relevant, that as pointed out by Plaintiff, while Dr. Thomas Motcyka's medical records from the end of 2012 indicate that Plaintiff uses a cane, and Plaintiff testified that he has a cane as prescribed by a Dr. McFadden, the ALJ did not discuss the use of a cane in his decision or how it

impacts his RFC determination that Plaintiff could perform light work. In fact, Plaintiff testified that he has been using a cane since 1988. Therefore, this Court remands Plaintiff's case to the ALJ to conduct a function-by-function analysis of the RFC which considers the above information in the analysis.

## **Conclusion**

The Court has thoroughly reviewed the entire record as a whole, including the administrative transcript, the briefs, the Magistrate Judge's R & R, Plaintiff's objections to the R & R, Defendant's response to Plaintiff's objections, and the applicable law. For the foregoing reasons, the Court respectfully rejects the recommendation of the Magistrate Judge. [ECF #14]. The action is remanded to the Commissioner to properly evaluate the Plaintiff's RFC, to explicitly consider the testimony of Nancy Shanahan and its effect on the analysis of Plaintiff's credibility, and to properly evaluate the statements and subsequent opinion of Elizabeth Knight, APRN. The Commissioner's decision is reversed pursuant to sentence four of 42 U.S.C. § 405(g) and the case is remanded to the Commissioner for further administrative action.

**IT IS SO ORDERED.**

Florence, South Carolina  s/ R. Bryan Harwell
September 18, 2017  R. Bryan Harwell
 United States District Judge